Scofield, J.,
delivered the opinion of the court:
August 15, 1873, claimants contracted with the Board of Public Works to furnish all necessary material and labor and build, “ in a good, firm, and substantial manner,” according to specifications, the sea-wall for J ames Creek Canal.
June 20,1874, while the work was in progress, the Board cf Public Works was abolished, Commissioners were appointed to take charge of the affairs of the District, and Lieut. B. L. Hoxie, of the Army, was assigned as District engineer.
An examination of the work followed. It was found that, although the contract was more than ten months old, less than one-third of the work had been done and much of that was done badly. Thereupon the Commissioners gave the claimants' orders to suspend work, and soon after advertised for new proposals.
Claimants complained, and made an unsuccessful effort in the Supreme Court of the District to secure an injunction.
The work was finally undertaken and completed by other parties.
*130 The claimants admitted upon the trial that they had been fully paid for all the materials furnished aud work done by them. They now claim prospective profits at the rate of $5 per lineal foot. The sea-wall covered by their contract was to have been 6,000 feet in length. -
Were the claimants rightfully or wrongfully deprived of their contract ? If rightfully, they have no legal claim for prospective profits.
By the fourth article of the contract,- the defendant was authorized on notice given to “ suspend work under this contract.” It was further provided in the fifth article:
“ That if at any time the parties of the first part shall be of opinion that the said work or any part thereof is unnecessarily delayed, or that the said contractors are willfully violating any of the conditions- or covenants of this contract or are executing the same in bad faith, all of the work may be discontinued under this contract or any part thereof.”
At the time of suspension the work had been very much delayed. What was to have been all done in four mon fchs was less than one-third done in ten months. So far as it had progressed many essential and important requirements of the contract had been neglected. The main piles were driven out of line; anchorage piles were omitted altogether j the sheet piles were of inferior quality, driven with the bark on and with wide gaps between. The tie-rods were omitted, the bond-stones were not used in the proportion required, and the masonry was of an inferior quality. The coping was omitted, and its place supplied by rubble masonry laid in poor mortar.
Under these circumstances, in the judgment of the court, the Commissioners were authorized by the terms of the contract to interrupt the work. They would have been guilty of a gross neglect of duty if they had allowed it to go on in this defective way. Claimants lost their contract through their own violations of it, and have no right to complain.
But even if the court were at liberty to consider the question of prospective profits, there is nothing in the findings by which the amount could be ascertained. It only appears there that the claimants had jobbed out their whole undertaking and that the sums agreed to be paid therefor amounted to $8.30 a lineal foot, $5 less than they were to receive. As to the character of the subcontractors, their responsibility, in *131 tegrity, and skill, nothing is proved. Nor does it appear that the subcontracts were approved by or known to the defendant. This finding, standing by itself, involves so many elements of uncertainty that it cannot be taken as a basis upon which to calculate possible gains. (Masterton v. Brooklyn, 7 Hill, 61; Seaton v. New Orleans (3 La. Ann., 44); Story v. N. Y. & H. R. R. Co. (6 N. Y., 2 Selden, 85); Sedgwick on Damages, 137.)
The defendant presents a counter-claim consisting of five items, amounting in all to $11,752.69 We will consider each in order.
Item 1. January 27, 1875, the District engineer measured the work and reported the same to amount, at contract prices, to $44,737.06, but recommended a deduction for imperfect work of $5,849.16. The Board of Audit deducted only $994.42, being $4,854.74 less than the estimate of the engineer. Except this small deduction the whole bill was audited and paid.
Although the contract provides that the District engineer shall make this measurement, it does not authorize him to estimate the damages. This estimate, having been made outside of his duties under the contract, is not conclusive as to the amount of damages. Upon what evidence or for what reasons the board of audit deducted as damages only $994.42 does not appear. From the facts of the case we do not feel authorized to say that they acted in mistake of fact, nor that the claimants were paid more than they were justly entitled to receive.
Item 2. Charles A. Appel and Daniel Donavan assisted by William D. Wise, on the 14th day of June, 1875, made a second measurement of the work. By this second measurement, which was.filed with the board of audit June 15, 1875, the amount of work done was considerably increased. Thereupon an additional sum of $1,731.03 was audited, allowed, and paid.
Item 3. June 15,1875, the board audited and allowed a bill of $1,825 for materials claimed to have been left upon the ground and used in the work by succeeding contractors. The claim was filed with the board June 15, 1875.
Items 2 and 3 may be considered together. The authority of the board to receive claims of this kind expired January 20, 1875, and these two items were filed June 15,1875. At that time the board had no jurisdiction in the premises, and upon its certificate the claimants can predicate no right to recover or retain the money. It does not appear in the finding *132 of the court that the claimants had on account of these two items any just or legal demand against the defendant whereby they can be allowed to retain these sums thus improperly paid them.
Item 4. The contract provided that the piles should be “ sawed off 18 inches below mean low-water mark.” Sills and flooring to the thickness of 18 inches were to be placed upon these piles, and over all a course of masonry, so that the woodwork should always be under water. The contract was plain and the purpose important. The claimants, however, sawed off the piles even with mean low-water mark, instead of 18 inches below it, and by thus subjecting the wood superstructure to the alternate action of air and water exposed it to early decay. The claimants were required to correct the error. This 1 was done at an alleged expense of $2,147.50. A bill for this amount was filed with the board February 10, 1875, as extra work, and as such was audited, allowed, and paid to the claimants. This allowance was most clearly made in mistake of fact, and should be refunded. It may be observed also that the claim was filed after the time allowed by law and the board was without jurisdiction over it.
Item: 5. At the time the bill of the second measurement (referred to in Item 2) was acted upon by the board, the $994.42 which had been previously deducted for defective masonry (referred to in Item 1) was included in said second measurement and so audited, allowed, and paid. As this deduction had once been approved by the board, a settlement made thereon, and the deduction agreed to by the claimants, its subsequent allowance must have been in mistake of fact. This conclusion is strengthened by the fact that it was included in the general measurement of the work and not made a separate and distinct item to be readily observed.
The decision of the court is:
1. That the claimants are not entitled to recover upon the claims set forth in their petition.
2. That the defendant is not entitled to recover back the first item of the counter-claim.
3. That the defendant is entitled to recover back the sums set forth in the second, third, fourth, and fifth items of the counter-claim, amounting in all to $6,697.95, and judgment will be entered accordingly.